HAYNES, C.
Mandamus to compel the defendant as treasurer to pay two certain warrants issued to the plaintiff by said irrigation district for his salary, as treasurer, accrued during his incumbency of that office. The plaintiff had judgment awarding a peremptory writ of mandate, and the defendant appeals from the judgment and from an order denying his motion for a new trial.
The first of these warrants was fully set out in the complaint, including the signature “W. F. Perry, President.” No issue was made as to the identity of the warrant or the signature of the president. In the findings this warrant was described as bearing the signature “W. T. Gerry, President,” and this error was carried into the judgment. In all other respects it was correctly described.
One of the grounds of defendant’s motion for a new trial was that the finding that a warrant was issued bearing the signature <CW. T. Gerry, President,” was not justified by the evidence, as there was no evidence that one of that name ever was president.
Upon the hearing of the motion for a new trial the plaintiff moved the court for an order correcting the error by inserting the name of W. F. Perry wherever the name W. T. Gerry appeared in the findings, judgment, and statement. The motion was .granted and an order made, but in the order as written another mistake was made by -writing the name W. P. Gerry instead of "W. T. Gerry.
Appellant contends that it was a judicial error, and could not ■be corrected otherwise than upon a new trial. It was clearly a ■mere clerical error which could be properly corrected by order, .upon the court’s attention being called to it, at any time before -appeal taken, or after the case is remanded. The error in the -order is of a similar character and may be amended.
*288 There is no conflict in the evidence as to any material fact, and no question is made upon the pleadings. A general outline of the facts shown by the evidence will present the principal questions. Some special points made by appellant will be noticed later.
The Perris Irrigation District was organised in June, 1890, under the provisions of the “Wright act.” (Stats. 1887, p. 29.) The plaintiff was elected treasurer of the district and served from its organization until March, 1893. Two warrants were issued to him for his salary, one on November 2,1892, for one thousand and sixty-six dollars and sixty-seven cents, and the other on March 8, 1893, for sixty-six dollars and sixty-six cents. These warrants were indorsed by the treasurer, on the day of their respective dates, “not paid for want of funds.” The defendant, Patterson, succeeded plaintiff as treasurer, and on August 5, 1895, the plaintiff presented said warrants to the defendant and demanded payment, which was refused upon the ground that there were but “two cents” in the “general fund,” upon which they were drawn.
Several funds, however, wrere carried upon the treasurer’s books, and in one of these, called the “water fund,” there was sufficient to pay plaintiff’s warrants, and the court found, in effect, that it belonged to the general fund, and was applicable to the payment of said Warrants, and whether that finding is justified by the evidence is the principal question in the case.
The irrigation act specifically provides for three funds. The first is the “bond fund,” provided in section 22, as amended in 1889. (Stats. 1889, p. 16.) This fund is raised by assessment upon the district, and is to be applied to the payment of the briefest on the bonds and their ultimate redemption.
Another fund is designated by section 15 (Stats. 1891, p. 147) as the “construction fund,” which, is to be applied to the purchase of necessary property, and constructing canals and works, which fund is derived, originally at least, from the sale of bonds.
There is another source of revenue provided for in section 37 of the act (Stats. 1889, p. 43), but no name is given to it. So milch of said section as is material here is as follows: “The cost and expense of purchasing and acquiring property, and constructing the works and improvements herein provided for, shall be wholly paid out of the construction fund. For the purpose of de *289 fraying the expenses of the organization of the district, and of the care, operation, management, repair, and improvement of such portion of said canal and works as are completed and in use, including salaries of officers and employees, the board may either fix rates of toll and charges, and collect the same from all persons using said canal for irrigation and other purposes, or they may provide for the payment of said expenditures by a levy of assessments therefor, or by both said tolls and assessments.”
In July, 1892, the board of directors instructed the treasurer to open and keep five separate accounts, or funds, viz: Construction fund, bond fund, water fund, general fund, and contingent fund. Afterward there was added to the list of funds, a rebate fund, a salary fund, a repair fund, an incidental fund, and a recording fund.
Omitting the construction fund and bond fund, which are provided for by the act, all the remaining funds are supplied from the following sources: The water fund from tolls and charges paid for water used. The rebate fund from money repaid by the Bear Valley company for certain persons whose lands were excluded from the district. The recording fund from penalties collected upon delinquent taxes. All the other funds were derived from assessments levied upon the district.
At the date demand was made for the payment of these warrants there was in the water fund sixteen hundred and fifty-six dollars and forty-seven cents, and in all the other funds— omitting the bond, construction and rebate funds—five hundred and sixteeen dollars and eighty-four cents.
The court found that the fund carried on the treasurer’s books as “the water fund” was wholly derived from tolls and charges fixed by the board of directors upon consumers of water using the pipe lines and canals of said district, and that under section 37 of the act (Stats. 1887, p. 43) it was applicable to the payment of salaries of officers and employees.
Appellant contends that this fund was set apart by the board to meet certain semi-annual payments to the Bear Valley Irrigation Company upon water rights purchased from it by the district, while respondent contends that said semi-annual payments could only be made from the “construction fund,” and that under the provisions of section 37 moneys derived from tolls *290 and charges collected from consumers must he applied to the specific purposes named in said section, which included the payment of salaries.
Instead of acquiring hy purchase or condemnation an independent source of water supply by the construction of reservoirs or the diversion of water from streams, the district purchased from the Bear Valley company twelve thousand five hundred of what is designated as “Class B acre water right certificates,” under which the Bear Valley company agreed to supply a specified quantity of water from its reservoir for each certificate. For these water right certificates the district paid a certain sum of money, and each of these certificates contains a provision that there should be paid thereon one dollar and thirty-nine cents on April 1st and October 1st of each year, and the directors have set apart said tolls and charges to the “water fund” to meet these semi-annual payments. It is obvious that the original sum paid for these certificates could only be taken from the construction fund under the provisions of section 37 above cited, which provides that: “The cost and expense of purchasing and acquiring property and constructing the works and improvements herein provided for shall be wholly paid out of the construction fund,” and this fund is supplied by the sale of bonds. (Stats. 1887, sec. 16, p. 36.) It is also clear that these semi-annual payments to be made upon the certificates is part of the contract of purchase of the water supply of the district, and should be paid out of the construction fund. It is not necessary to hold, and we do not hold, that if there should be a surplus arising from the collection of tolls and charges, after the payment of salaries and other expenses expressly provided for, that it could not be applied to these semi-annual payments, or other liability of the district.; but we do hold that it must be applied to the payment of salaries and the expenses expressly mentioned in the act, unless the board “provide for the payment of said expenditures by a levy of assessments therefor, or hy both said tolls and assessments.”
Ho assessment was levied to meet salaries or other expenses either in 1890 or 1891, and none until October, 1892, for the payment of salaries and expenses. The amount of the assessment ordered in 1892 does riot appear. In September, 1893, an election was held at which the question of raising twenty-two thousand *291 two hundred and fifty-five dollars and twenty cents, to meet a deficiency of eight thousand one hundred and eighty-seven dollars and forty cents in the construction fund, and eleven thousand three hundred and sixty-seven dollars and eighty cents of warrants for salaries of officers and employees, was submitted and defeated; and immediately thereafter an estimate of the expenses for the ensuing year was submitted to the voters of the district, and was carried, and since that time no assessment seems to have been voted to meet the old deficiency resulting from the adverse vote at the first election in September, 1893. The adverse vote did not relieve the district from its liability to pay the salaries of officers and employees. The tolls and charges made against the consumers, and the assessments, are each and both for the same purpose, viz., to defray the expenses “of the care, operation, management, repair, and improvement of such portions of the said canal and works as are completed and in use, including salaries of officers and employees.” These expenses may be provided for either by tolls or by assessments, or by both; but the statute does require that these expenses shall be paid, and whenever there are funds in the treasury from either source, both methods having been resorted to by the board, they may and should be applied to the payment of these demands.
It is argued by counsel for appellant that the payment of one dollar and thirty-nine cents semi-annually on the water certificates is no more than “a reasonable amount to keep the ditches in repair, and pay the necessary expenses of delivering the water.” But under the contract the Bear Valley company is to deliver the water at a certain point. ¡Neither the contract nor the certificates specify the purpose for which the semi-annual payments are to be made to the Bear Valley company, but they are clearly a part of the purchase price of the water to be delivered by that company to the district at the point fixed by the contract.
Appellant’s further contention, that the judgment must be reversed because of the failure to find upon the issues made by the second defense, has been substantially covered by what has already been said.
The fact that the said acre water right certificates are forfeit-able for the nonpayment of said semi-annual payments does not *292 affect the right to pay salaries out of a. fund provided by the statute for that purpose; nor is that right affected by the further fact that assessments have been made and collected for the purpose of paying salaries, since the answer concedes that plaintiff’s salary has not been paid and that there are no funds raised by assessments out of which it could be paid; and therefore the facts alleged require that plaintiff’s warrants be paid from tolls and' charges collected, and which, so far as required to make up any' deficiency in the assessments cannot be applied to purposes which should be met from the construction fund. The controverted questions arising under said second defense are of law and not of fact, and a finding of every fact as alleged would not have affected the conclusions of law drawn from the findings as made.
The third defense is, in substance, that the debt or liability to plaintiff was incurred in excess of the express provision of said act, and is wholly void.
This defense is based upon section 43 of said act as amended in 1891 (Stats. 1891, p. 147), which reads as follows:
“Sec. 43. The board of directors, or other officers of the district, shall have no porver to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of this act; and any debt or liability incurred in excess of such provisions shall be and remain absolutely void, except that for the purposes of organization, or for any of the purposes of this act, the board of directors may, before the collection of the first assessment, incur an indebtedness not exceeding in the aggregate the sum of twro thousand dollars, and may cause warrants of the district to issue therefor, bearing interest at seven per cent per annum.”
The original section ended with the word “void,” and the-amendment was made by adding the exception immediately following.
That the liability of the district for the salary of its treasurer and other necessary officers enumerated in the act was incurred under the express provisions of the act cannot be questioned. The act provides that the treasurer shall be elected by the district, requires him to give a bond in the sum of fifty thousand dollars, and authorizes the board of directors to fix bis salary, and provides for a source from which his salary may be paid.
*293 It is therefore clear that the liability here sought to be enforced was not among those made void by the original act. I also think it clear that it is not affected by the amendment.
The amendment purports to save or except from the operation of the original act certain liabilities which by it were made void. The use of the word “except” implies that; and the first specification thereunder, “for the purposes of organization,” confirms the implication. “A corporation is not responsible for the acts nor bound by the contracts of its promoters done or entered into before incorporation, unless it is made so either by its charter or by its own express promise or ratification after incorporation.” (4 Am. & Eng. Ency. of Law, 201, and cases there cited.)
The words immediately following, viz., “or for any of the purposes of this act,” must he hold also to relate to indebtedness which under the original section would have been void, and cannot therefore affect the validity of plaintiff’s claim, since the limitation of two thousand dollars applies to the exceptions above mentioned, and not to liabilities expressly authorized by the act, and which were necessarily incurred in conducting its business.' This construction of said section renders it unnecessary to discuss appellant’s contention that a limitation of the amount of indebtedness which may be incurred by a municipal corporation prohibits the incurring of any indebtedness for any pm-pose, including the salaries of officers authorized by the act and essential to the transaction of its business. For a discussion and decision of that question by this court, see Welch v. Strother, 74 Cal. 413, Lewis v. Widber, 99 Cal. 412, and Hunt v. Broderick, 104 Cal. 313.
The findings clearly support the judgment and cover every material issue, and no error appearing which would justify a reversal, I advise that the judgment and order appealed from be affirmed.
Belcher, C., and Britt, C., concurred.
For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.
Harrison, J., Garoutte, J., Van Fleet, J.