[L. A. No. 5196. In Bank.—September 11, 1920.]

### R. P. BIGGART, Appellant, v. WALTER A. LEWIS, County Auditor, etc., et al., Respondents.

[1] COUNTY WATER DISTRICT—ILLEGAL EXPENDITURE OF FUNDS—INJUNCTION—RIGHT OF RESIDENT AND TAXPAYER.—A taxpayer of and resident within a county water district formed under the act of 1913 (Stats. 1913, p. 785), has the legal right to invoke the remedy of injunction to restrain the expenditure of the funds of the district if such expenditure finds no sanction in the law.

[2] ID.—LEGALITY OF CLAIM FOR SERVICES—APPEAL FROM JUDGMENT—DETERMINATION FROM COMPLAINT.—Where an appeal is taken from a judgment rendered upon an order sustaining demurrers to plaintiff's complaint in an action to enjoin the payment of a claim for services in the promotion and organization of a county water district, the legality of the claim, as well as the legality of its allowance by the supervisors, must be determined by consideration of the scope and effect of the allegations of the complaint.

[3] CORPORATIONS—ACTS OF PROMOTERS PRIOR TO EXISTENCE—LIABILITY—APPLICABILITY OF RULE TO PUBLIC CORPORATIONS.—The rule to the effect that acts of promoters performed prior to the existence of a corporation are not binding upon the corporation, unless made so by the act under which the incorporation took place, or adopted by the corporation after it comes into existence, applies to public as well as private corporations.

[4] COUNTY WATER DISTRICT — SERVICES PRIOR TO FORMATION — AUTHORITY OF SUPERVISORS TO CONTRACT.—In the matter of the organization of a county water district under the act of 1913, there is nothing in the provisions of the act which empowers the board of supervisors to contract and pay for legal or other services rendered to the freeholders of the proposed district in the preparation and procurement of the petition for the ultimate creation of the district, or which authorizes the board to pay for legal or other services rendered to such freeholders in the preliminary promotion of the district.

[5] ID.—ESTIMATE OF COSTS AND INCIDENTAL EXPENSES—STATEMENT IN PETITION—CONSTRUCTION OF ACT.—The provision of the act of 1913 requiring the petition for the creation of a county water district to contain an estimate of the cost of the proposed improvements and of the incidental expenses in connection therewith, has reference, as to the required provisions of the ordinance calling the election, wholly to such expenses as are generally and incidentally necessary to the construction and the maintenance and operation of the plant and business of the proposed district after it has actually come into being as a legal entity.

[6] ID.—PREPARATION AND PRESENTATION OF PETITION—NONLIABILITY OF DISTRICT.—The act of 1913 does not bind a district organized thereunder to pay the expenses incurred by promoters in connection with the preparation and filing of the petition for the formation of the district, and such expenses cannot be assumed after it comes into existence, for the act specifies and limits the purposes for which the funds of the district may be expended.

[7] CORPORATIONS—ILLEGAL ACT—RATIFICATION.—An act or contract which a corporation is not legally permitted to perform cannot be

3. Liability of corporation to third parties on contracts of its promoters, notes, 8 Ann. Cas. 262; Ann. Cas. 1916C, 105.

ratified or adopted by such corporation, whether the corporation be private or municipal.

[8] COUNTY WATER DISTRICT — ALLOWANCE OF CLAIMS — GOVERNING RULES.—Under the act of 1913, the management of a county water district is, to some extent, a county affair, and in the absence of more specific provision in the act, the same general rules and regulations which govern the board of supervisors in acting upon claims against the county proper must cover and control the allowance of claims against the district.

·[9] COUNTIES—ALLOWANCE OF CLAIMS—REVIEW BY COURTS.—A court is not precluded from reviewing an allowance by a board of supervisors for the purpose of ascertaining whether the allowance was within the jurisdiction of the board.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Reversed.

The facts are stated in the opinion of the court.

Milton K. Young, Byron Coleman and Lyndol L. Young for Appellant.

W. C. Shelton, A. J. Hill, County Counsel, and Edward T. Bishop, Deputy County Counsel, for Respondents.

LENNON, J.—The plaintiff in this action sought to restrain by injunction the defendants, Lewis and Hunt, respectively auditor and treasurer of the county of Los Angeles, from auditing and paying a· demand purporting to have been allowed by the supervisors of said county in favor of the defendant Gibbon for services claimed to have been rendered by him in the promotion and organization of "Los Angeles County Water Works District No. 3." Following an order sustaining a general demurrer to the plaintiff's complaint without leave to amend, judgment was rendered and entered for the defendants, from which the plaintiff has appealed.

Briefly stated, the pleaded facts of the plaintiff's case, in so far as they are pertinent to· a discussion and decision of the points presented on the appeal, are these: Los Angeles County Water Works District No. 3 was duly created by the board of supervisors of said county on November 16, 1914, and ever since has been in existence and operation under and by virtue of the provisions of an act entitled, "An act to

provide for the formation, management and dissolution of
county irrigation districts" etc. (Stats. 1913, p. 785.) The
plaintiff was at all times involved in the subject matter of
the action a resident taxpayer within said waterworks dis-
trict and was the owner of certain designated property of
the alleged value of $16,750, situated therein, which was
subject not only to the lien and encumbrance of the district's
bonds, but also to the lien and encumbrance of any and all
taxes and assessments which might, from time to time, be
levied for the maintenance of the district. The defendant
Thomas E. Gibbon, an attorney at law, presented, on or
about the sixth day of June, 1916, to the board of super-
visors of the county of Los Angeles, a demand against the
district which, as shown by an "amended claim" set forth
in the body of plaintiff's complaint, was in the sum of ten
thousand dollars. The claim was "for services rendered to
Los Angeles County Irrigation District No. 3. (1) Negotiat-
ing and deciding upon the plans and specifications for the
main distributing pipe-lines for said district as to size of
pipe, method of construction, length of pipe and particularly
the cost to be borne by said district of .the Franklin Canyon,
Glendale, and Chatsworth main lines, which plans were
necessary to ascertain the probable cost to the district of
the proposed distributing system. Also negotiating and
deciding whether the said district should include in its plans
and specifications a portion of the cost of the Chatsworth
reservoir. (2) Advice to freeholders concerning all matters
arising by reason of the proposed organization of said dis-
trict. (3) Checking and passing upon the description of
external boundaries of said district and on the cost of same.
(4) Preparation of the petition for the organization of said
district and the issuance of bonds thereby." The board of
supervisors on the 8th of January, 1917, by resolution pur-
ported to approve and allow said demand to the extent of
and for the sum of five thousand dollars, and ordered a
warrant to be drawn upon the defendant Walter A. Lewis,
as county auditor, requiring him to approve and allow said
demand in the sum of five thousand dollars, and, by the
same resolution and order, directed the defendant John N.
Hunt, as county treasurer, to pay said demand to the extent
of the sum allowed thereon out of the funds of the district.

The plaintiff's complaint by appropriate allegations proceeded upon the theory that the demand of defendant Gibbon was not based upon the rendition to the district of any services contemplated by the legislative enactment permitting the formation of irrigation districts; that, inasmuch as none of the services which were made the basis of the demand are provided for in said legislative enactment, or elsewhere, the same are not and cannot be made a legal charge against the district; that, therefore, the purported and partial allowance of said claim was and is wholly illegal and void and of no effect. The plaintiff instituted the action on his own behalf and upon behalf of all of the residents, taxpayers, and freeholders within the district. The defendants' demurrers were general and based solely upon the ground of the insufficiency of the facts pleaded in the plaintiff's complaint to state a cause of action, and they were apparently sustained by the court below primarily upon the theory that the services upon which defendant claimed compensation were services rendered to the water district, or at least provided for by the act under which the district was organized, and that, therefore the allowance of the claim by the board of supervisors of Los Angeles County was a matter within its jurisdiction, and also upon the ground that, when passing upon and allowing the claim, said board was acting in a *quasi*-judicial capacity and, as a consequence, its judgment of approval and allowance of the claim could not be reviewed and disturbed by a court of law.

The demurrers were not well taken and should have been overruled. [1] It is conceded at the outset, as indeed it must be, that the plaintiff, as a taxpayer of and resident within the district, has the legal right to invoke the remedy of injunction to restrain the expenditure of the funds of the district if it can be said that such expenditure finds no sanction in the law, [2] and the case coming here as it does upon a judgment rendered upon an order sustaining demurrers to the plaintiff's complaint, the question of the legality of the claim, as well as the legality of its allowance by the board of supervisors, must be determined by the consideration of the scope and effect of the allegations of the complaint. The complaint specifically and affirmatively alleges, among other things, that the services claimed to have been rendered to the district by the defendant Gibbon, and

which constituted the basis of his demand against the district, were not the services provided for or contemplated by the legislative enactment (Stats. 1913, p. 785), permitting and providing for the organization of the district; that said Gibbon did not in fact perform or render any services in connection with the district subsequent to its formation or at any time when it had a legal existence; that said defendant did not in fact perform any services for said district or for the use and benefit of said district. These allegations of the complaint are fortified by the recitals of the demand made upon the district by the defendant Gibbon, which was incorporated in the complaint. These recitals make manifest that the services rendered by the defendant Gibbon and for which the board allowed him compensation in the sum of five thousand dollars were performed at a time when the district was but a proposition—incipient and inchoate—and that the precise nature of said services consisted in the furnishing of aid in connection with the preparation and filing of the petition for the formation of the district. Consequently the complaint sufficiently shows, as against a general demurrer, that such services were performed at a time prior to the formal formation of the district into an organized and existing corporate legal entity.

It is well settled that a private corporation cannot be held liable for the acts of its promoters, nor be obligated by their conduct and contracts, in the absence of charter provisions providing therefor or of an adoption of such conduct or contracts by the corporation after it comes into existence. (*Mitchell* v. *Patterson*, 120 Cal. 286, 293, [52 Pac. 589]; Ehrich on Promoters, pp. 74–83.) This is so upon the obviously correct theory that a corporation cannot, no more than can an individual, have agents or enter into contractual relations until it is actually in being as a thing apart from its procreators. (Fletcher's Cyclopedia of Corporations, sec. 150.) The rule in this behalf is perhaps more precisely stated and the reason therefor aptly illustrated in the case of *Gent* v. *Manufacturers' etc. Ins. Co.*, 107 Ill. 652, 658, where it was said: "That a corporation should have a full and complete organization and existence as an entity before it can enter into any kind of a contract or transact any business, would seem to be self-evident. This is unconditionally true, unless the act of incorporation authorizes the corporators to perform

acts and enter into contracts to bind the company when it shall be organized. As well say a child *in ventre sa mere* may enter into a contract, or that its parents may bind it by contract. A corporation, until organized, has no being, franchises, or faculties. Nor do those engaged in bringing it into being have any power to bind it by contract, unless so authorized by the charter. Until organized as authorized by the charter there is not a corporation, nor does it possess franchises or faculties for it or others to exercise, until it acquires a complete existence. By its birth, so to speak, it for the first time acquires its faculties to transact its business and perform its functions.'' The rule in this behalf has been held to apply to the conduct and contracts of promoters who, after incorporation, became and constituted all of the stockholders, directors, and officers of the corporation. (*Battelle* v. *Northwestern etc. Pavement Co.*, 37 Minn. 89, [33 N. W. 327].) And it has been applied with equal force to public as well as to private corporations. (*Mitchell* v. *Patterson, supra.*) It is well settled that municipal corporations cannot, any more than can private corporations, exercise any power other than those which are conferred on them by the act under which they are incorporated, or such as are necessarily incidental to the exercise of their corporate rights, the performance of their corporate duties, and the accomplishment of the purposes for which they are created. (*Hood* v. *Mayor*, 1 Allen (Mass.), 103.) And it has been held that a municipality has no authority to appropriate money from the treasury of the municipality for the purpose of paying expenses incurred by individuals prior to its incorporation for legal advice, or for the services of lawyers rendered in the procurement of the passage of an act permitting the incorporation, in the absence from the act itself of a grant of any authority for the payment of such expenses. (*Frost* v. *Inhabitants of Belmont*, 6 Allen (Mass.), 152.) In so holding the court said: ''The act of incorporation does not provide for the payment of any of these expenses, and it has never been the custom of the legislature to make provision 'for the payment by towns newly incorporated of any part of the expenses incurred in procuring the passage of the act of incorporation. And the authorities cited by the plaintiffs establish the point for which they contend, that towns have no right under their general acts of incorporation, or under

any of the statutes relating to the subject, to apply the money of the town to the payment of debts or expenses incurred by individuals prior to their corporate existence as a town, or to raise money for such a purpose. The town, therefore, had no authority to make any provision for the payment of any portion of these bills, because they are for expenses incurred before the town was incorporated.'' (*Frost* v. *Inhabitants of Belmont, supra.*) [3] It is thus apparent that the rule to the effect that acts of promoters performed prior to the existence of the corporation are not binding upon the corporation, unless made so by the act under which the incorporation took place or adopted by the corporation after it comes into existence, applies alike to private and public corporations. It is therefore immaterial, for the purposes of this case, whether the water district involved here comes within the category of municipal corporations or is to be considered as a mere special organization created by permission of the state as an agency of the state for the performance of work which the policy of the state permits and requires to be done. In either event, the district is a corporation and this rule is applicable to all such bodies by reason of having its foundation in the fundamental theory of corporate existence, namely, that a corporation is a distinct and independent entity brought into existence solely by sanction of law and possessing only those powers ascribed to it by law.

This then brings us to a consideration of the provisions of the act under which the water district involved here was authorized and created. The act under which said water district was created provides that the petition, which may and which must, of course, be presented to the board of supervisors for the formation of the district, shall contain the name and boundaries of the proposed district, a general description of the desired improvements, the construction, installation, etc., of the waterworks, and ''an estimate of the cost of the proposed improvements and of the incidental expenses in connection therewith.'' Following the presentation of a sufficient petition for the purpose stated, the act authorizes the board of supervisors to proceed and provide by ordinance or resolution for the holding of a special election at which there shall be submitted to the qualified voters of the proposed district ''the proposition of

forming such district and incurring a debt by the issuance
of bonds of such district for the purposes set forth in said
petition.'' The ordinance or resolution calling such special
election must also recite ''the objects and purposes for which
the proposed indebtedness is to be incurred, the estimated
cost of the proposed improvement, the amount of the prin-
cipal of the indebtedness to be incurred therefor,'' etc.
[4] There is nothing in these provisions of the act which
empowers the board of supervisors to contract and pay for
legal or other services rendered to the freeholders of the
proposed district in the preparation and procurement of the
petition for the ultimate creation of the district, or which
authorizes the board to pay for legal or other services
rendered to such freeholders in the preliminary promotion
of the district. [5] Fairly construed, the provision of the
act requiring the petition for the creation of the district to
contain ''an estimate of the cost of the proposed improve-
ments and of the incidental expenses in connection there-
with'' has reference, as do the required provisions of the
ordinance calling the election, wholly to such expenses as
are generally and incidentally necessary to the construction
and the maintenance and operation of the plant and business
of the proposed district after it has actually come into being
as a legal entity. The language of the requirement of the act
that the petition shall contain an ''estimate of the cost of the
proposed improvements and of the incidental expenses in
connection therewith'' does not in and of itself, nor when
read in conjunction with other provisions of the act, in-
dicate, as counsel for respondents contend, that the legis-
lature intended that the district when finally formed should
pay the cost of legal advice and the expenses of preparing
plans and specifications, or any other expenses incidental to
the mere promotion of the district. As employed in the act,
the word ''incidental'' must be taken in its usual and
ordinary meaning and, therefore, as having reference to
something which is subordinate to and dependent upon and
follows the existence of another and principal thing.
(Webster's Dictionary; *McFarlan Co.* v. *Potter,* 21 Ind. App.
692, [51 N. E. 737].) More precisely, an incident is defined
to be ''a thing which either usually or naturally and in-
separably depends upon, appertains to or follows another
that is more worthy.'' (Bouvier.) In short, a distinguish-

ing and dominating characteristic of an incident is to be found in the fact that it always and necessarily appertains to a pre-existing and principal thing, and manifestly the pre-existing and principal thing dealt with by the act in question is the probable cost as a whole of the proposed improvement when finally formulated into a going corporate concern. This being so, the "incidental expenses in connection therewith" contemplated by the act must be those detailed expenses which naturally and necessarily appertain to and follow the estimate of the whole cost of the proposed improvements and, being so, the conclusion is inescapable that it was no part of the legislative intent when enacting the act in question to provide for the payment for services performed in the preparation and presentation of a petition for the formation of the district. This conclusion is fortified, if need be, by a consideration of the provisions of the act permitting and prescribing the procedure for the formation of the district. Thus, the ordinance for the calling of a special election following the presentation and approval of the petition is not required to make reference to the petition other than to recite that the election shall be called for the purpose of submitting the proposition of forming the district, "and incurring a debt by the issuance of bonds of such district for the purposes set forth in said petition." While the ordinance itself must also recite "the objects and purposes for which the proposed indebtedness is to be incurred," it is not required, in so far as the cost of the enterprise is concerned, to do more than set out "the estimated cost of the proposed improvement," and "the amount of the principal of the indebtedness to be incurred therefor." Furthermore, the act provides that the money raised from the sale of bonds "shall be applied exclusively to the purposes and objects mentioned in the ordinance or resolution ordering the holding of the bond election, as aforesaid." It will be noted that "incidental expenses" incurred prior to the formation of the corporation are not called to the attention of the voters nor recited as among the purposes for which the money raised from the sale of the bonds may be expended, and, as the act provides that such money must be applied to certain designated purposes and objects and no others, then it would seem inevitably to follow that the board of supervisors are without power to expend the money raised from the sale of the bonds

for the payment of expenses not designated by the act. This conclusion is not impaired by anything contained in those further provisions of the act which require to be filed with the petition for the formation of the district an undertaking in double the amount "of the probable cost of forming such district," obligating the sureties thereon to pay such cost in the event "that the formation of such district shall not be effected." True, the latter provisions of the act were apparently intended to guard against a liability on the part of the county for the "cost of forming such district" only in event of the failure of formation. Obviously, if no bond were required to cover this cost, the burden of the election, and perchance repeated elections for the same purpose, if the formation of the district failed to carry, would fall upon the county and, having such a contingency in mind, the legislature therefore placed the burden of the cost of forming the district, through the medium of the required undertaking, upon the promoters of the district only in the event of the failure of the formation of the district. And it may well be that the legislative intent contemplated that the burden of such cost, if the proposition carried, should be ultimately borne by the district when finally formed. However, it does not follow from this that the legislature thereby indicated an intention that the funds of the district when organized should be resorted to for the payment of expenses incurred by individuals prior to the formation of the district. While the act does not specify the items of the "probable cost of forming such district," nevertheless there is a manifest and decided difference between the "cost of forming the district," and the "cost of proposed improvements" necessary to the operation of the district, and, when limited, as is the undertaking, specifically to the "cost of forming," it can only cover and control, it seems to us, such cost as would be necessarily and naturally incurred in putting in motion the procedure requisite for the formation of the district *after the preliminary step of filing the petition has been taken;* such expenses, for instance, as the cost to the county of calling and holding the required election for the submission to the voters of the proposed district of the question of forming the district.

[6] It follows inevitably from this interpretation that the statute under which the district involved herein was organized

did not bind the district to pay the expenses incurred by promoters in connection with the preparation and filing of the petition for the formation of the district. Furthermore, not only were the acts of the promoters in incurring such expenses not binding upon the corporation in and of themselves, but those acts could not be adopted by the corporation after it came into existence, for, as previously stated, the statute specifies and limits the purposes for which the funds of the district may be expended, and such specification is totally devoid of any provision for the payment from said funds of expenses in connection with the petition for organization. [7] Payment of these expenses from the funds of the district is therefore *ultra vires* as to the district, and an act or contract which the corporation is not legally permitted to perform cannot be ratified or adopted by such corporation, whether the corporation be private or municipal. (1 Fletcher's Cyclopedia of Corporations, sec. 153; 3 McQuillin on Municipal Corporations, secs. 1255, 1256.) The claim of defendant Gibbon was consequently not a legal charge against the district.

It will be noted that the water district in question is referred to constantly throughout the act authorizing its creation as a "county" water district and, in this behalf, it will be further noted that the board of supervisors is made the governing body of the district after the district is created, and that the funds of the district are deposited in the county treasury to the especial account of the district and the disbursement thereof is under the control of the board of supervisors. [8] It will thus be observed that the management of the district is, to some extent at least, a county affair and, therefore, in the absence of more specific provision in the act, the same general rules and regulations which govern the board of supervisors in acting upon claims against the county proper must cover and control the allowance of claims against the district. The board of supervisors has jurisdiction to allow only such accounts as are "legally chargeable against the county" (Pol. Code, sec. 4041), and, therefore, in dealing with claims against a water district, it can have jurisdiction only to examine, settle, and allow accounts "legally chargeable" against the district. [9] A court of law is not precluded from reviewing an

allowance by a board of supervisors for the purpose of ascertaining whether the allowance of the claim was within the jurisdiction of such board. It may be conceded ''that when passing upon the correctness of the claim in controversy the board of supervisors was sitting and acting as a *quasi*-judicial body, and that therefore its conclusion that such claim should be allowed and paid was an adjudication which . . . would ordinarily be final and conclusive. . . . '' (*Jacks* v. *Taylor,* 24 Cal. App. 667, 671, [142 Pac. 121, 122].) This, of course, is the settled and general rule in this state, but the rule presupposes jurisdiction in the board to allow the claim at all. In other words, the mere presentation of the claim was not sufficient in and of itself to clothe the board with jurisdictional power to allow it, nor did the order for its allowance in itself operate to prevent a consideration of the question by the courts as to whether or not the board did, in fact, have jurisdiction to allow the claim, and the mere fact that the claim was allowed by the board did not invest the claim with a validity which it did not theretofore possess. (*Jacks* v. *Taylor, supra.*) The question here raised of the power to attack the validity of an allowance of a claim by a board of supervisors is similar to the question considered in the case of *Walton* v. *McPhetridge,* 120 Cal. 440, 444, [52 Pac. 731, 733], where the court said: ''The case at bar is not one merely involving the findings of fact by a board with respect to a claim clearly chargeable against the county and within the jurisdiction of the board to allow or reject. In such a case, the conclusion of the board is final, and the auditor has no discretion to disregard it. Here the question is not one of fact, but whether or not the claim is in its nature one which the board had jurisdiction to allow. The mere introduction of the written claim which appellant presented to the board, with the indorsement of allowance, does not make a *prima facie* case. It does not show upon its face that it is a claim chargeable against the county, and when viewed in the light of the complaint, the contrary appears.'' The claim of defendant Gibbon being in its inception and by its very nature an unauthorized and therefore illegal charge, its allowance by the board of supervisors was without jurisdiction and illegal. (*Perry* v. *Ames,* 26 Cal. 372; *Linden* v.

*Case,* 46 Cal. 171; *Los Angeles County* v. *Lankershim,* 100 Cal. 525, [35 Pac. 153, 556]; *Von Schmidt* v. *Widber,* 105 Cal. 151, [38 Pac. 682]; *Kelley* v. *Sersanous,* 5 Cal. Unrep. 485, [46 Pac. 299].)

Concluding, as we do, that the claim in question was not a legal charge against the district and therefore was beyond the jurisdiction of the board of supervisors in allowing claims against the district, it will be unnecessary for us to discuss the question as to whether or not the complaint, in the face of a general demurrer, sufficiently alleges that the claim was not presented to the board within the time required by law.

The judgment is reversed.

Lawlor, J., Olney, J., Shaw, J., Wilbur, J., Sloane, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.