[L. A. No. 7302.    In Bank.—April 5, 1923.]

W. E. SER-VIS, etc., Appellant, v. VICTOR VALLEY IRRIGATION DISTRICT, etc., Respondents; EDWIN O. WEIK, Intervener and Respondent.

[1] IRRIGATION DISTRICTS—SERVICES IN ORGANIZING—SECTION 61 OF ACT 1726, GENERAL LAWS—CHARGES AGAINST DISTRICT.—Under the exception contained in section 61 of Act 1726 of General Laws no services rendered prior to the time of the filing of the petition with the board of supervisors proposing the organization of an irrigation district can be deemed or considered services rendered for the purpose of organization as that phrase is employed in said section, so as to be chargeable against the district; but services from and including the filing of the petition to the time of filing the return of the election, as provided in section 10, fall within the organization period for which the district may be chargeable.

[2] ID.—FAILURE OF ORGANIZATION—LIABILITY FOR COSTS.—Where the proposed formation or organization of an irrigation district is defeated at an election, the burden of the cost thereof is placed on the promoter through the medium of the undertaking required by the act.

[3] ID. — PREORGANIZATION SERVICES — WHEN CHARGEABLE AGAINST DISTRICT.—Services rendered prior to organization of an irrigation district in securing certain valuable options on water rights, reservoir sites, land, and other property taken in the name of a third person who was to hold, and did hold, the title until the irrigation district was organized and then conveyed them to the district, the property covered by said options and the water rights being of such nature that the irrigation district could not have secured water from any other source and

without which the district could not have constructed an irrigation system or put the land in the district in cultivation or under irrigation, are services coming within the purposes of the act and for payment of which warrants of the district are authorized to be issued.

[4] ID.—SINGLE DEMAND — ILLEGAL ITEMS — VOID WARRANTS. —Warrants of an irrigation district based upon a single demand of which a substantial part is beyond the power of the board of directors to allow are totally void.

[5] ID.—TRANSFER OF WARRANTS—DEFENSE OF INVALIDITY—INNOCENT PURCHASER.—Warrants of an irrigation district issued in payment of illegal demands are void either in the hands of the original holder or of a purchaser for value.

APPEAL from a judgment of the Superior Court of Los Angeles County. Bertin A. Weyl, Judge. Reversed.

The facts are stated in the opinion of the court.

Charles J. Kelly for Appellant.

H. G. Redwine, G. A. McElroy, Roy V. Reppy, B. F. Woodward and S. V. O. Prichard for Respondents.

KERRIGAN, J.—This is an action brought by a land owner in the Victor Valley Irrigation District to have canceled by decree of court certain warrants issued by the board of directors of said district, on the ground that the said board had no authority to issue the warrants and that they are therefore void. Judgment went for the defendants and intervener, declaring that the warrants thus sought to be canceled were legal and valid and subsisting obligations of the district. From this judgment plaintiff appeals.

F. M. Walton, one of the defendants, had been employed by an unincorporated association to perform certain services looking to the organization of a regularly, legally constituted irrigation district. In his capacity as an officer and agent of the unincorporated association, covering a period of four years, he rendered services and made disbursements, which services and disbursements, it is claimed, come within the purview of the exception to section 61 of the California Irrigation District Act, approved March 31, 1897, (Stats. 1897, p. 254; Deering's General Laws, 1915, Act

1726). Whether they do or do not presents the question we are required to decide.

The section reads: "The board of directors or other officers of the district shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of this act; and any debt or liability incurred in excess of such express provisions shall be and remain absolutely void, except that for the purposes of organization, or for any of the purposes of this act, the board of directors may, before the collection of the first assessment, incur indebtedness in such sum or sums as shall amount to two thousand dollars, or if the district shall contain more than four thousand acres, to one-half as many dollars as there are acres of land in the district, and may cause warrants of the district to be issued therefor, . . . "

Section 42 of an earlier statute, the Wright Act (Stats. 1887, p. 29), was similar to section 61, above quoted, down to the words "absolutely void." In 1891 (Stats. 1891, p. 142), said section 42 was amended by adding an exception, substantially the same as that contained in said section 61; so that, prior to such amendment, only such liabilities as were expressly provided for in the act could be incurred by the board of directors, and any liability incurred in excess of such provision was and remained absolutely void.

In construing section 42 of the Wright Act, as amended in 1891, the supreme court, in *Mitchell* v. *Patterson,* 120 Cal. 286, 293 [52 Pac. 589, 591], said:

"The amendment purports to save or except from the operation of the original act certain liabilities which by it were made void. The use of the word 'except' implies that; and the first specification thereunder, 'for the purposes of organization,' confirms the implication. . . .

"The words immediately following, viz., 'or for any of the purposes of this act' must be held also to relate to indebtedness which under the original section would have been void, . . . "

The case was submitted upon an agreed statement of facts. They are as follows: The defendant, Victor Valley Irrigation District, was organized October 22, 1917, under said Act 1726, General Laws of the State of California. Prior to the organization of the defendant Irrigation District the various land owners within its boundaries formed an or-

ganization under the name of Victor Valley Mutual Water & Power District Association, an unincorporated organization, which had for its object the making of arrangements preparatory to the organization of an irrigation district whereby the land embraced in the Victor Valley Irrigation District could be put under irrigation and cultivated. Of this former organization the defendant F. M. Walton was one of the active members and acted as the agent for all of those who belonged thereto, and for the period of four years, from October, 1913, to October, 1917, just preceding the organization of the defendant Victor Valley Irrigation District, rendered certain services and expended certain sums of money on behalf of the original organization and its members.

On December 4, 1917, shortly after the organization of the defendant Victor Valley Irrigation District, at a regular monthly meeting of its board of directors, the defendant F. M. Walton presented to the board of directors a detailed verbal statement of his expenditures made on behalf of the former organization, and also of a balance due him on account of his salary as agent of the former organization, at the rate of $125 per month; the expenditures and services totaling a sum of $12,000, which was compromised between F. M. Walton and the board of directors, and warrants were issued in his name in the sum of $6,635. Of the warrants so issued, approximately $3,575 have been paid, the remainder, in the sum of approximately $3,055, are now outstanding and unpaid. Of the warrants so remaining unpaid $600 are still held by defendant F. M. Walton, and $1,500, represented by three warrants, are held by the intervener, Edwin O. Weik, having been indorsed to him by F. M. Walton for good and valuable consideration. The remaining unpaid warrants are held by persons not parties to this action. The district contains approximately 73,000 acres of land.

The expenditures were made and the services performed prior to the organization of the irrigation district, and the services and advances were rendered and made for the purpose of securing data and perfecting plans and arrangements whereby an irrigation system could be organized and perfected. During the period for which defendant Walton received salary he spent some four months in securing sig-

natures to the petition necessary to be filed with the board of supervisors of the county of San Bernardino in order to propose and bring about the organization of said irrigation district. He also, a short time before the organization of the district, spent considerable time and effort in securing valuable options on water rights, reservoir sites, land, and other property, which options were taken in the name of a third person, and, as intended and arranged, they were subsequently transferred and conveyed to the Victor Valley Irrigation District. The property covered by said options was indispensably necessary to enable such irrigation district to construct an irrigation system and to put the land embraced within the district under cultivation and irrigation.

The act under consideration contains various provisions for raising funds for the district, e. g., section 30 provides for the issuance of bonds to meet the expenses of construction of the irrigation works and for otherwise carrying out the provisions of the act; section 34 authorizes the levy of assessments to complete the construction of the irrigation works, and section 59 deals with special assessments. In order that the district may avail itself of any of these provisions, either a certain contingency must have arisen or certain prescribed steps must be followed, and the funds thus raised are destined to meet specified expenditures; they are "earmarked," so to speak, before they are collected by the district; and section 61 declares to be void any indebtedness incurred except under the conditions and in the manner prescribed by the various sections of the act dealing with the collection of funds, except that the board of directors is given power to incur a limited amount of indebtedness without compliance with those provisions, such indebtedness to be either "for the purpose of organization" or "for any of the purposes of this act."

Considering first the proposition of whether or not the services rendered and the expenditures incurred were for the purposes of organization, the warrants were issued for services and expenditures rendered and made by F. M. Walton as a promoter prior to the taking of any definite action looking to the immediate organization of the Victor Valley Irrigation District. The language of the agreed statement of facts itself indicates that the services and ad-

vances were not, strictly speaking, rendered and made for the purposes of organization, for the stipulation speaks of the work as "preparatory to the organization of an irrigation district." Again, that "the services were prior to the organization of the present irrigation district." They were preorganization services.

Section 1 of said Act 1726, as amended in 1917 (Stats. 1917, p. 751), provided that:

"A majority in number of the holders of title or evidences of title . . . to lands susceptible of irrigation from a common source and by the same system of works . . . may propose the organization of an irrigation district under the provisions of this act . . . "

Section 2 of the act, as amended in 1917, page 752, provided that:

"In order to propose the organization of an irrigation district, a petition shall be presented to the board of supervisors of the county in which the lands within the proposed district, or the greater portion thereof are situated, signed by the required number of holders of title, or evidence of title, including such aforesaid possessory rights to lands within such proposed district, and representing the requisite majority in value of said land, or a petition shall be presented to said board of supervisors signed by not less than five hundred petitioners, . . . The petition . . . must be accompanied with a good and sufficient undertaking, to be approved by the board of supervisors, in double the amount of the probable cost of organizing such district, conditioned that the sureties shall pay all of said costs in case said organization shall not be effected. . . . "

[1] Section 10 provides when the organization shall be deemed complete. From the language of sections 1 and 2 it would appear that no services rendered prior to the time of the filing of the petition with the board of supervisors proposing the organization of the irrigation district could be deemed or considered services rendered for the purpose of organization as that phrase is employed in section 61 of the act. Any services rendered from and including the filing of the petition with the board of supervisors to the time of filing the return of the election as provided in section 10 would, we think, fall within the organization period. In the case of *Biggart* v. *Lewis,* 183 Cal. 660, 670 [192 Pac.

190 Cal.—47

437], the court, in construing the act of 1913 (Stats. 1913, p. 785), providing for the formation and so forth of county irrigation districts, held that certain legal services rendered by an attorney at law in preliminary promotion work of the district, not being services for which the board of supervisors under the act was empowered to contract for and to pay, the same could not be made a legal charge against the district. There the court also, in construing certain language of the act, viz., "the cost of forming the district" (which, we take it, is synonymous with "the cost of organizing the district," 29 Cyc. 1527), held that it was intended to cover and control such cost "as would be necessarily and naturally incurred in putting in motion the procedure requisite for the formation of the district *after the preliminary step of filing the petition has been taken.*"

[2] As we have seen, section 2 in part requires that the petition for the formation of the district be accompanied by an undertaking in double the amount of the probable cost of the organization of the district, obligating the sureties thereon to pay such costs in case the formation of such district shall not be effected. If the proposed formation of the defendant district had been defeated at the election and this action had been against the sureties on the bond, could it be said that the expenses of the attempted organization would embrace the outlay here sought to be recovered? We think not. Yet such a case and the instant case are alike in respect of what would constitute expenses of organization. Where the proposed formation or organization of an irrigation district is defeated at an election, the burden of the cost thereof is placed on the promoter through the medium of the required undertaking. Prior to the amendment of section 42 of the Wright Act, adding the exception now contained in said section 61, if the election of the proposed district carried, the promoter was still required to carry the burden of the cost of the formation or organization of the district; and the purpose of the amendment under discussion was doubtless to remedy this defect in the law and to enable the irrigation district to pay the cost of organization, which would be the same cost which the sureties would have to pay if the project was defeated, and would include, as we have seen, the costs incurred from and including the filing of the petition to the

time when, after the canvass of the vote cast at the election, the board of supervisors shall declare the result thereof.

[3] We are of the opinion, however, that certain of the services enumerated in the stipulation of facts as having been rendered by Walton are of such a character as to bring them within the second of the two classes for which the board of directors could expend the funds of the district, or incur indebtedness, without prior compliance with the several financial provisions of the act touched upon, namely, an indebtedness created ''for any of the purposes of this act.'' We refer to the services of Walton in ''securing certain valuable options on water rights, reservoir sites, land and other property . . taken in the name of a third person, who was to hold and did hold the title thereto until said irrigation district was organized, and then transferred and conveyed them to said district,'' said options having been secured for the express purpose of being afterward conveyed to said district, and the property covered by said options and the water rights included therein being of such a nature that said irrigation district could not have secured water from any other source and without which said district could not construct an irrigation system, and could not put the land in said district in cultivation or under irrigation. Clearly, the acquisition of rights of this nature, so essential for the successful prosecution of an irrigation enterprise, comes within the purposes of the act.

[4] Had the warrants here in question been issued in payment for these services only, we would have no doubt as to their validity; but the statement of facts and the findings of the court plainly show that these services, although evidently very valuable, constituted but a small part of the claim of Walton, and no specific part of the sum allowed him was allocated to those services. A lump sum was allowed him as compensation for all his services and disbursements. The warrants, therefore, issued in his favor, being based upon a single demand of which a substantial part was beyond the power of the board of directors to allow, must be held to be totally void.

[5] The appellant also urges that the intervener, Weik, in acquiring one or more of the warrants in question, took them subject to the defense of their invalidity, notwithstanding that he was a purchaser for value.

The point is well taken. The warrants here in question, although negotiable in form, were issued by a statutory body as a convenient method of ordering payment of money from the treasury of the district, and in this respect are precisely like county warrants issued upon the order of a board of supervisors. As to such warrants this court, in the case of *Dana* v. *San Francisco,* 19 Cal. 486, in holding them not to be negotiable instruments in the sense of the law-merchant, said: "We think that the plaintiff, counting alone upon the county scrip or warrants as negotiable instruments, evidencing of themselves an indebtedness on the part of the county, cannot maintain his pretension. This seems to be decided in the case of *People* v. *Supervisors. of El Dorado County,* 11 Cal. 170. The reason is that the auditor had no authority to draw a bill of exchange, but he can only, in certain cases, issue warrants upon the order of the supervisors, or the allowance by the board of an account, which is chargeable as a debt upon the county. The warrant is not intended to constitute a new debt, or evidence of a new debt, against the county, but is the prescribed means the law has devised for drawing money from the county treasury. . . . The question here is, not whether the county had the power to make a bill of exchange, but whether the auditor, when, under the statute, he issues a warrant, has the power to give it the form and qualities of such an instrument. We think he has not, and that the paper, as here presented, has no such effect, if indeed it was so designed."

We conclude, therefore, that the warrants here in question were void either in the hands of the original holder or his transferee, and consequently that the plaintiff was entitled to the relief prayed for.

The judgment is reversed.

Myers, J., Lawlor, J., Waste, J., Seawell, J., Lennon, J., and Wilbur, C. J., concurred.