[Civ. No. 3830.  Third Appellate District.—December 5, 1929.]

NEWS PUBLISHING COMPANY (a Corporation), Appellant, v. GUARDIAN THRIFT COMPANY OF SUSANVILLE (a Corporation), Respondent.

R. M. Hardy for Appellant.

J. E. Pardee and Grover C. Julian for Respondent.

FINCH, P. J.—The plaintiff brought this action to recover the amount alleged to be due on several stated accounts. Judgment was entered in favor of the defendant and the plaintiff has appealed.

There is little conflict in the evidence. Where it is conflicting, only the evidence which supports the findings and judgment will be stated. It appears that W. H. Tobin was engaged in promoting the organization of industrial loan corporations known as Guardian Thrift Companies. During the months of September and October, 1926, he was promoting the organization of such a corporation under the name of the Guardian Thrift Company of Susanville. About the middle of October his stepson, C. B. Daniels, gave the plaintiff an order for printed forms for the defendant. The name "Guardian Thrift Company of Susanville" was not printed in any of the forms except the stock certificate book. The name printed in the other forms was "Guardian Thrift Company of ——." It does not appear by what authority Daniel placed the order for these forms, but he was not authorized to act for the defendant. November 6, 1926, Tobin made a written offer, directed to the "Organization Committee, Guardian Thrift Company, Susanville, California," in which he stated:

"As you are about to engage in the industrial loan business in Susanville, I take occasion to address you as follows:

"I own and control certain plans, designs, forms, working sheets and other data, especially adapted to the conduct and operation of the business in which you propose to engage. These plans, etc., are generally known as the Guardian Plan, and I make the following proposition:

"I will give you the full and exclusive use, for Lassen County, California, during your charter existence of all these said plans, designs, forms, etc., and all other data under my control, necessary for the proper conduct of your business. I will supply you, without expense to you, all forms, designs, plans, etc., in sufficient quantity to operate your company for the first twelve months. Thereafter said supplies will be furnished to you at net cost to me.

"I will furnish competent instructors to teach your employees how to properly handle and conduct your business in all its details; such instructors to be furnished at my expense and to remain without cost to your company until your employees are thoroughly competent to carry on the work.

"I will give you the supervision and advice, when requested and as hereinafter provided, without expense to you, as follows: I will furnish you with audits every three months from the date you begin business, for the period of one year, and thereafter, at your request, at the cost to me for said service, . . .

"In full remuneration for the above mentioned services and concessions, you shall constitute me as the fiscal agent for the sale of all the capital stock of your company and pay me twenty per cent of the selling price of the stock, payable as and when said stock is sold."

The offer was accepted by the "Organization Committee of the Guardian Thrift Company of Susanville" on the same day it was made. The defendant was incorporated November 10, 1926. Daniel went to Susanville some time in November to instruct J. B. Christie, the defendant's secretary and manager. The defendant received a permit to sell stock on November 30th, and on December 2d it "opened the doors for business." Only a part of the printed forms were delivered, the remainder thereof being kept by the plaintiff for future delivery at Daniel's direction. The forms which were delivered "were received at the office of the (defendant) company either by Mr. Daniel or Mr. Tobin at some time, and probably . . . about the 6th or 7th of November" and "after the company was organized and went into operation those forms were used by the company." Daniel "never was an employee of the company. . . . He was the party that was furnished by Mr. Tobin

under his contract to instruct Mr. Christie." He remained in the defendant's office almost constantly for three or four months. He instructed Christie "in the handling of the business of the office" and "in a general way" he and Christie "conducted the business of the office," including "the receipt and handling and answering of mail." Daniel "said he was supposed to be an auditor for his company." Among the things furnished by the plaintiff under Daniel's said order was a "binder for form 10." The defendant paid for it on the ground that it was not one of the things which Tobin had agreed to furnish. The plaintiff mailed bills to the defendant at Susanville, for parts of the forms printed, on November 17th, 19th, 23d and 29th, and thereafter mailed statements of account twice a month during January and February, 1927. Thereafter the plaintiff received a letter, dated March 5, 1927, signed "Guardian Thrift Company, by C. B. Daniel," and stating:

"In reply to your letter of the first instant. We regret the delay in cleaning up our account with you but you can be assured that same will be taken care of before the last of the present month."

The officers in charge of the defendant's business had no knowledge of the foregoing bills or statements or of the fact that Daniel had assumed to make the purchases for the defendant until early in April, 1927, after Tobin and Daniel had left, when a statement of account was received by the defendant. The defendant immediately informed the plaintiff that it was not liable for the payment of the account, but that "under our contract with Mr. Tobin, who promotes and organizes such companies as ours, he is to pay for all advertising, all printing and furnish all forms for the first year."

There is not the slightest evidence to show that Daniel had actual authority to order the supplies in question for the defendant. Appellant contends that he had ostensible authority to so order them. "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, sec. 2317; 1 Cal. Jur. 739.) The defendant did nothing prior to the giving of the order and its receipt of the supplies, to cause the plaintiff to believe that

Daniel had authority to bind it. The claim of ostensible authority, therefore, is without support in the evidence.

Defendant's use of the supplies, under the belief that they were being furnished by Tobin in accordance with his agreement, did not constitute a ratification of Daniel's unauthorized act, the defendant having no knowledge of such act. (1 Cal. Jur. 777.)

Appellant seems to contend that the defendant is bound by the acts of Tobin, the promoter of the organization. Neither the defendant nor the persons who subscribed for its capital stock authorized Tobin to order or purchase supplies for it, but he agreed to furnish supplies of the kind in question at his own expense. "Acts of promoters performed prior to the existence of the corporation are not binding upon the corporation, unless made so by the act under which the incorporation took place or adopted by the corporation after it comes into existence." (*Biggart* v. *Lewis,* 183 Cal. 660, 667 [192 Pac. 437].)

There is ample evidence to support the finding that there was not an account stated between the parties. There is a disputable presumption that the defendant received the statements of account mailed to it by the plaintiff, but the court was not bound to find in accordance with the presumption against positive evidence to the contrary. Neither was there a previous indebtedness. "An account stated requires that there be an acknowledgment of a previous indebtedness, since such indebtedness constitutes the consideration upon which the new contract is based." (1 Cal. Jur. 190.)

The judgment is affirmed.

Jamison, J., *pro tem.,* and Thompson (R. L.), J., concurred.