[S. F. No. 17113. In Bank. Oct. 16, 1945.]

BOARD OF SOCIAL WELFARE, Petitioner, v. COUNTY OF LOS ANGELES et al., Respondents.

Robert W. Kenny, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Petitioner.

J. H. O'Connor, County Counsel, and S. V. O. Prichard, Assistant County Counsel, for Respondents.

SCHAUER, J.—Petitioner, the Board of Social Welfare of this state, by this mandamus proceeding seeks to compel respondents to comply with its orders to issue to three recipients of aid for the aged duplicate warrants to replace certain county warrants which had been originally issued in payment of such aid but which because they were not presented for payment were cancelled by the county, pursuant to the provisions of section 222 of the Welfare and Institutions Code, after the expiration of six months from the respective issue dates. One of the original warrants was not presented for payment because the recipient thereof was an inmate of the county hospital and physically unable to cash his warrant; the other two warrants had been lost in the mails. Each of the three aged persons—Karl Schamesberger (acting through a guardian), William C. Weitzel, and Eugene Dosse—informally applied to the County Auditor of the County of Los Angeles for, but was denied, the issuance of a new warrant; each then appealed to the petitioner welfare board, which, as stated above, ordered respondents to reissue the warrants. Respondents refused, and this proceeding followed.

Respondents, in defense of their refusal to issue duplicate

warrants to the three aid recipients, argue that the law makes no provision for appeal to the state welfare board upon refusal by a county auditor to issue such duplicate warrants; that because the original warrants were cancelled by the county auditor pursuant to the provisions of section 222 of the Welfare and Institutions Code, it is now (and at the times of the respective applications was) too late for the aid recipients to apply for duplicate warrants; and that inasmuch as such recipients have not complied with the provisions of sections 140 and 2183.1 of the same code they are not entitled to the writ sought.

Although respondents' first point—that no provision is made by the law for appeal to the state welfare board upon refusal by a county auditor to issue a duplicate warrant to replace one which has been lost or destroyed, and that such board is without specifically stated power to order the issuance of such duplicate warrant—appears to be technically correct, it is to be noted that by section 103.5 of the Welfare and Institutions Code "It is . . . declared that provision for public aid to the needy aged . . . as in this code provided is a matter of State-wide concern. The board is . . . designated as the single State agency with full power to supervise every phase of the administration of the public assistance plans [for the needy aged]. . . ." We are therefore of the opinion that although such board may be without specific authority to directly order the issuance of a duplicate warrant by a county auditor under such circumstances as are here depicted, nevertheless the board is a "party beneficially interested" in the issuance of such warrant, within the meaning of the provision of section 1086 of the Code of Civil Procedure that "It [the writ of mandamus] must be issued upon the verified petition of the party beneficially interested" (see 16 Cal.Jur. §§ 53-56, pp. 850-856), and is a proper party to maintain mandamus proceedings against county officials who fail or refuse to issue a warrant to a needy aged person who is a member of a class entitled thereto. Persons who are members of such a class are ordinarily financially, and often physically, unable to maintain such proceedings on their own behalf, and to deny to them the assistance of the welfare board under such circumstances would tend to defeat the purpose of the legislation which seeks to provide for them during needy old age.

The rule is stated thus in 35 American Jurisprudence 73, section 320: "[B]y the preponderance of authority . . . where the question is one of public right and the object of the man-

damus is to procure the enforcement of a public duty, the re-
lator need not show that he has any legal or special interest
in the result, since it is sufficient that he is interested as a
citizen in having the laws executed and the duty in question
enforced. . . . [P. 76, § 322.] Generally, when a power or
duty is imposed by law upon a public board or officer, and in
order to execute such power or perform such duty, it becomes
necessary to obtain a writ of mandamus, it or he may apply
for the same.'' ▉▉▉ Here the provision of public aid to .
the needy aged is a matter of state-wide concern, under the
administration of the social welfare board which is ''desig-
nated as the single State agency with full power to supervise
every phase of the administration of the public assistance
plans for which grants-in-aid are received from the United
States Government in order to secure full compliance with
the provisions of Titles 1 and 4 of the Federal Social Security
Act'' (Welf. & Inst. Code, § 103.5), and we are satisfied that
such board may properly maintain this mandamus proceeding.

▉▉▉ Respondents next assert that inasmuch as section 222
of the Welfare and Institutions Code provides that ''Any
county warrant issued for the giving of aid to, and payable
to, . . . a needy aged person, . . . or the guardian, trustee,
disbursing agent, or any custodian of the funds or estate of
any of them, shall be canceled if not presented to the county
treasurer for payment within six months after the date of
issuance,'' the application for issuance of a duplicate warrant
to replace one that has been lost or destroyed must be made
before the original warrant has been canceled for nonpresen-
tation to the county treasurer. We are not in sympathy with
such a position. By sections 140 and 2183.1 of the same code
it is provided that *''Whenever* a warrant for [public aid]
. . . has been lost or destroyed before it has been paid by the
county treasurer, the amount due thereon may be recovered
by the payee by filing with the county auditor an affidavit
setting forth the fact of the loss or destruction of the warrant,
together with all material facts relative thereto known to the
affiant, the amount, the name of the payee, and the date and
number of the warrant if the same are known to the affiant.
Upon receipt of the affidavit, and without the filing of any
bond by the payee, the county auditor shall [in § 2183.1
the word ''may'' appears, rather than ''shall''] issue and
deliver to the payee of the original warrant a duplicate war-
rant for the full amount of the original warrant, and the

county treasurer shall pay the duplicate warrant in lieu of the original warrant." (Italics added.)

No such limitation period as that contended for by respondents is provided by the quoted sections, and we perceive no sound basis upon which it could be read therein. ██ As was stated by this court in *Dana* v. *San Francisco* (1861), 19 Cal. 486, 491, "The warrant is not intended to constitute a new debt, or evidence of a new debt, against the county, but is the prescribed means the law has devised for drawing money from the county treasury." (See, also, *Ser-Vis* v. *Victor Valley Irr. Dist.* (1923), 190 Cal. 732, 740 [214 P. 223].) The aid recipients here involved were issued the original warrants because they were entitled to payment from the county treasury of the sums for which such warrants were drawn. ██ A clear and explicit method is provided by sections 140 and 2183.1 of the Welfare and Institutions Code for the replacement of lost or destroyed warrants, regardless of whether such warrants have been canceled for nonpresentation, and we are of the opinion that in cases such as these a county auditor must, upon filing of the affidavit described in such sections, issue duplicate warrants to replace those previously issued. In the case now before us two of the original warrants were admittedly lost and the third we presume has been destroyed (inasmuch as respondents state that section 2183.1 provides a method which could have been followed by each of the three aid recipients). Although sections 140 and 2183.1 became effective after the loss and cancellation of one of such original warrants, that fact is immaterial, since such sections do not purport to create a new right in the payee to receive additional aid, but only provide a method for the payment from the county treasury of money to which he was already entitled.

██ Respondents have suggested, also, that to permit aid recipients to secure replacements of lost or destroyed warrants, with no limitation of the time within which application therefor must be made, will enable them to accumulate "warrants and hold . . . them for an indefinite period of time, thus to amass an estate for heirs of the aged recipient." The suggestion lacks persuasive force. If the Legislature has not, by the use of reasonably clear language, itself imposed such a limitation we should not, in the face of the express legislative admonition (Welf. & Inst. Code, § 2003) that "this chapter [chap. 1, div. III, which includes sections 2000 to 2230] shall be liberally construed," write it in. Furthermore, it is obvi-

ous that lost or destroyed warrants could not as such be "accumulated," and if it did come to pass that there was any substantial accumulation of funds evidenced by such warrants, a seemingly remote possibility, it would be no concern of the respondents as to *when* the money should be spent so long as all the conditions which otherwise entitled the recipient to receive the aid were existent. No contention is advanced that the applicants' rights have been barred by the lapse of time through the operation of any statute other than section 222 of the Welfare and Institutions Code and we imply no holding that such rights may not eventually be barred by an appropriate statute.

Respondents' final contention is that inasmuch as the aid recipients here involved have not shown that they have complied with the provisions of sections 140 and 2183.1 of the Welfare and Institutions Code they are not entitled to the writ applied for. This contention is supported by the record. As appears hereinabove by such sections it is provided that *"Whenever* a warrant for [public aid] . . . has been lost or destroyed before it has been paid . . . the amount due thereon may be recovered by the payee by filing with the county auditor an affidavit setting forth the fact of the loss or destruction of the warrant, together with all material facts relative thereto known to the affiant, the amount, the name of the payee, and the date and number of the warrant if the same are known to the affiant. Upon receipt of the affidavit, and without the filing of any bond by the payee, the county auditor shall [§ 2183.1, "may"] issue and deliver to the payee of the original warrant a duplicate warrant for the full amount of the original warrant, and the county treasurer shall pay the duplicate warrant in lieu of the original warrant." (Italics added.)

Although petitioner asserts in its brief that in each of the three cases, "It is admitted that appropriate application [for a duplicate warrant] was made," the record fails to disclose any factual basis justifying such assertion. Petitioner has cited to us and we have discovered no provisions of law other than sections 140 and 2183.1 of the Welfare and Institutions Code and section 4082 of the Political Code which would authorize a county auditor to issue a duplicate warrant for the payment of aid. The only application provided for by such statutes requires the presentation of the affidavit therein described. (The requirement of section 4082 of the

Political Code that an applicant for a duplicate county warrant to replace one which has been lost or destroyed before payment must file with the county auditor, in addition to an affidavit of loss or destruction, a bond of indemnity, admittedly does not apply here.) It appears from the stipulated facts that no such affidavit was at any time filed by or on behalf of any of the applicants for a duplicate warrant. In view of such fact it must be held that no mandatory duty on the part of the auditor to issue such duplicate warrants has been presently shown.

For the reasons stated above the application for the peremptory writ of mandate is denied and the alternative writ heretofore issued is discharged. Such orders are without prejudice to the right of each of the applicants hereinabove named to make formal application for the issuance of a duplicate warrant in accordance with the provisions of sections 140 and 2183.1 of the Welfare and Institutions Code.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.