[Civ. No. 3069. Fourth Dist. Feb. 10, 1943.]

In re SHAFTER-WASCO IRRIGATION DISTRICT, on Voluntary Dissolution. BOARD OF DIRECTORS OF SHAFTER-WASCO IRRIGATION DISTRICT, Appellant, v. CHARLES WESTENBERG et al., Respondents.

H. E. Schmidt and Ernest H. Tuttle for Appellant.

Maddox & Abercrombie for Respondents.

GRIFFIN, J.—The Shafter-Wasco Irrigation District is one formed and functioning under the California Irrigation District Act (Stats. 1887, p. 29, approved March 7, 1887; and Stats. 1897, p. 254, approved March 31, 1897; Deering's Gen. Laws, 1937, Act 3854). It embraces a large body of land in northern Kern County.

The present action was brought in an attempt to determine the validity of proceedings, to approve the proposed plan of dissolution, and to dissolve the district under the statute providing for the voluntary dissolution of irrigation districts. (Stats. 1903, p. 3, as amended, Act 3876, Deering's Gen. Laws, 1937, p. 1903.) The trial court decided that the dissolution proceedings were invalid.

The contestants base their contest mainly on three grounds which, for sake of clarity, may be grouped thusly: first, in respect to the sufficiency of the petition for dissolution; second, as to the validity of the election and the results thereof; and third, as to the sufficiency of the showing made concerning the proposed plan for dissolution of the district and the validity of the proceedings.

The trial court found to be untrue petitioner's allegation that "In conformity with section 2 of the California act for the voluntary dissolution of irrigation districts, a petition was duly prepared and circulated proposing the dissolution of the Shafter-Wasco Irrigation District"; but did find that the district had no outstanding bonds or coupons; that it is true that the district has indebtedness and has had indebtedness at all times material to the proceeding; that it has assets, including monies in bank, office furniture, and equipment, delinquent assessments and certificates of sale of lands sold for delinquent assessments; that the assessments unpaid on land sold to the district for unpaid assessments, together with the amount of the assessments on each parcel of land were in fact according to the list in evidence; that it is not true, as alleged, that any proper petition for the dissolution of the district was ever presented to or filed with the board of directors of the district; that it is not true that notice of the election was ever given in accordance with the provisions of the act to voluntarily dissolve irrigation districts; that

it is not true that any election to dissolve the district was duly or regularly held; that it is true that the purported petition for the dissolution of the district fails to describe any lands sold to said district for assessments, the amount of such assessments on any parcel of land sold, the amount of assessments unpaid, or the amount of assessments on any lot or tract of land; that the signers of the petition failed to insert the respective dates on which they signed the same or their respective addresses; that the dissolution petition was not signed by two-thirds of the qualified electors of the district; that the dissolution petition failed to state the indebtedness of the district or its assets; that it was insufficiently signed at the time it was filed; that there was no sufficient order calling the election; and no sufficient notice; that the notice of election purported to be under section 2a of the act and failed to state any plan for the dissolution of the district; that the directors of the district never adopted any plan for the dissolution of the district; that all the purported proceedings for the dissolution of the district were and are null and void and in violation of the substantial rights of the contestants and of other electors and landowners in the district. Judgment was entered denying the relief for which petitioner prayed.

The petition, under the act, may be one of two different types. The first type of petition is described in section 2 of the act. Its essential attributes, as applied to this case, are (1) the petition must be signed by a *majority* in numbers of the *holders of title,* or evidence of title, to real property in the district; who must also hold a *majority* in *value* of said *property* according to the last equalized assessment roll of the district. (2) The petition must set forth the amount of outstanding bonds, coupons, and other indebtedness, if such there be, together with the general description of the same, and the holders so far as known, showing the amount of each description of indebtedness and the ownership, so far as known, of the same. (3) The petition also must contain the estimated cost of dissolution of the district. (4) It must state the assets of the district, including irrigation system, if any, dams, reservoirs, canals, franchises, water rights, and all other assets, and it particularly requires a ''detailed statement'' of all the lands sold to the district for assessments, the amount of the assessments on each parcel of land sold, also all assessments unpaid, and the amount on each

lot or tract of land. (5) The petition must state any plan proposed by the district's creditors to settle its indebtedness.

The second general type of petition for dissolution is described in section 2a of the act. The procedure and requirements of this type of petition differ greatly from those set forth in section 2. The petition provided for in section *2* is required in the case of a district which is a going concern, with assets and liabilities. On the other hand, the requirements of section *2a* are to be followed by a district which has no assets or liabilities and has ceased to be a going concern. In such case section 2a provides that the petition for dissolution mentioned in section 2 of the act shall contain statements showing that the district has no indebtedness, no assets, and has ceased to be a going concern and has no irrigation system by which it conveys water for irrigation or domestic purposes to any of the residents of such district, and also that it is the desire of the signers of such petition to have said district dissolved. Such petition need not contain any other statement or allegation but it must be signed by *two-thirds* of the *qualified electors residing in such district,* and by the holders of title or evidence of title representing at least *50 per cent of the acreage* within said district and not less than *50 per cent in value* of all lands lying within the exterior boundaries of said district, and such petition so signed and containing such statements and allegations shall be sufficient. In such case, proceeding under section 2a, the *plan of dissolution* referred to in section 3, may be entirely omitted and it shall not be necessary for the petitioner or persons signing such petition, or for the board of directors of the district to *propose any plan* for the dissolution of such district or any plan for the liquidation of its indebtedness or the distribution of its assets. Reasonably construed, this last provision which waives the necessity of any plan of dissolution being set forth in the petition or being adopted by the board of directors, implies the necessity of such proposed plan being set forth in the petition where the petitioners proceed under section 2, where there are assets and liabilities subject to distribution. Under section 3 the notice of election *must* also set forth a brief summary of the plan proposed for liquidating its indebtedness and disposing of its assets. Section 2 provides that the petition *shall* state the assets and liabilities of the district together with any plan proposed to settle same, and this

proposed plan "shall be included in said petition." No plan of distribution of any of the assets of the district or plan for the settlement of its liabilities was proposed or stated in the petition or notice of election. ▮ It should be here noticed that the petition for dissolution directed to the board of directors of the district consisted of 23 counterparts. All were filed on May 6, 1941. Each section thereof specified (1) that the district was theretofore formed under the irrigation district act; (2) that each of the undersigned is a member of said irrigation district, or is a qualified elector residing in said district and is the owner of the lands described opposite his name and that said lands and all of them are a part of said district; (3) that the said district has no *outstanding* bonds, coupons or other *indebtedness;* (4) that said district has no assets, so far as petitioner knows, except possibly a small sum of money in bank and its office furniture; (5) that said district has no irrigation system, dams, reservoirs, canals, franchises or water rights, *and that no lands have been sold to the district for assessments;* (6) that following is a list of assessments unpaid, together with descriptions of the parcels of land upon which such assessments are assessed, (The petition does not set forth any such list) ; (7) that the estimated cost of the dissolution of the district is $600; and (8) that the undersigned pray that the district be dissolved. Opposite the names signed on the petition appears, in most instances, the address of the signer, and opposite the address under the heading "Description of Property" appears, after a majority of the signatures, a meager description of property such as "lot 9 & 10," "50 ft. lot Wasco," and "one lot in Wasco, 80 acres." In some instances there were more minute descriptions of the property given, but a majority showed no property descriptions opposite the names. After May 6, 1941, more sections of the petition were allowed to be presented at various times until there were 37 counterparts in all. There were no verifications attached to the various sections of the petition by the circulators thereof nor any other document filed attesting to the genuineness of the signatures or that the signers were property owners or registered voters in the district. The record clearly shows that the only check on the sufficiency of the signatures on the petition was made by the secretary of the district. He first typed a list of the landowners of the district as shown by the assessment book. This was the

only source of information. The assessment book was made up in his own handwriting and no other handwriting appeared in the book. He did not make up the petitions, circulate them, nor see them signed, and did not know the signatures of the purported signers. The entire investigation was to compare the names appearing on the petition with the names on this typewritten list and to report the result to the board of directors. This constituted the entire effort of the board to determine the sufficiency of the signatures on the petition. There is no provision *in the act* requiring the signatures to be proved by the affidavits of the circulators. The clerk of the board testified that 888 signatures or names of landowners appeared on the petition out of a total of 1,751 landowners in the district, or 12 names over the required majority. There was no testimony as to the number of registered qualified electors signing the petition. From a reading of the petition under consideration it is difficult to tell whether the petitioners were proceeding under section 2 or under section 2a of the act. *Qualified electors* are not required to sign the petition under section 2, yet the petition recites that the signers are qualified electors residing in the district. The obvious general import of the petition is that the district has no indebtedness or assets or irrigation system. One would infer from the recitation of facts that the petitioners were proceeding under section 2a. Apparently, however, the petition is not signed by two-thirds of the qualified voters residing in said district. There are over 5,000 qualified voters in the district. The petition was signed by only 888 persons. Counsel for appellant, in his brief, confines his argument to the fact that section 2 of the act is applicable, and contends that he has fully complied with that section. It is obvious, without argument, that the signatures on the petition are insufficient under section 2a. If we proceed to discuss the sufficiency of the petition and validity of the proceedings under section 2a, we are immediately confronted with the fact, and the findings of the court supported by the evidence, that the district, at the time of the filing of the petition, did have assets, including monies in bank, office furniture, and equipment, delinquent assessments and certificates of sale of lands sold for delinquent assessments, and also certain indebtedness, and that it was a going concern. (The petition alleged that no lands had been sold to the district for assessments

but the court found otherwise upon sufficient evidence.) Under these facts, it would have been necessary for petitioner to proceed under section 2 of the act. This failure to comply with section 2a, without considering the other matters pointed out, would justify the order of the trial court denying petitioner the claimed relief heretofore set forth, upon a petition based upon section 2a, mainly because of a lack of signatures and because there were assets to be distributed. We therefore must examine the petition to see if it complies with the provisions of section 2 of the act. From a careful examination it becomes immediately apparent that it does not. In the first place, the petition failed (1) to set forth the indebtedness, together with a general description of the same, showing the amount of each description of indebtedness and the ownership, so far as known. (2) It failed to state the assets of the district including water rights and all other assets. (3) It failed to set forth a "detailed statement" of all the lands sold to the district for assessments, the amount of the assessments on each parcel of land sold, and also all assessments unpaid and the amount on each lot or tract of land, which were particularly required. The petition should have stated any plan proposed by the district's creditors to settle its indebtedness or any plan proposed for the distribution of its assets. As far as the record shows no such plan was proposed and none was set forth *in the petition* or *notice of election*. It was therefore impossible for the trial court to pass upon any proposed plan as required. Section 4 of the act provides that the proceeding is one *in rem*; that jurisdiction of all parties interested may be had by publication of a notice of the pendency of the proceeding; that persons interested may appear and contest the validity of the proceedings already had and of "the plan proposed for the dissolution" of the district or any portion of the indebtedness "set out in said petition." Respondents, who are interested parties, filed written objections and exceptions to the proceedings, setting up the defects we have already pointed out. The action was tried by the court and it found that the errors and omissions which we have just discussed, together with the other claimed errors not necessary to further discuss, were in violation of the substantial rights of respondents and other electors and landowners of the district.

■ The act provides that the court shall hear and determine the regularity and legality and correctness of all proceedings. (*In re Madera Irrigation Dist.*, 92 Cal. 296, 331 [28 P. 272, 675, 29 Am.St.Rep. 106, 14 L.R.A. 755]; *Happy Valley Water Co.* v. *Thornton*, 1 Cal.2d 325, 330 [34 P.2d 991]; *Directors of Fallbrook Irr. Dist.* v. *Abila*, 106 Cal. 365, 370 [39 P. 793]; Code Civ. Proc., § 1981; *People* v. *Selma Irr. Dist.*, 98 Cal. 206 [32 P. 1047]; *Bottoms* v. *Madera Irr. Dist.*, 74 Cal.App. 681 [242 P. 100].) The action being one *in rem*, and the jurisdiction of all persons affected being obtained by the publication of a notice, it seems clear that the burden of establishing the regularity of the proceedings and the proper performance of all of the various requirements laid down falls upon the petitioner as the party asserting the regularity of the proceedings and relying upon them as the basis for a request for affirmative relief.

■ In all cases it is essential that there be proof of a sufficient petition, inasmuch as without it the board could acquire no jurisdiction to act, and its proceedings would be absolutely void. (*In re Madera Irr. Dist.*, supra, at p. 333; *Stumpf* v. *Board of Supervisors*, 131 Cal. 364, 367 [63 P. 663, 82 Am.St.Rep. 350].)

■ Appellants concede the omission of many of the requirements above discussed, but rely mainly upon section 5 of the act which provides that the court in passing upon the regularity, legality and correctness of all proceedings shall disregard an error, irregularity or omission which does not affect the substantial rights of the parties, and contend that since there is no provision requiring any proof to be made to the board of directors of the district as to the genuineness of the signatures of the petitioners, or any requirement that the circulators of the petition for dissolution must verify the signatures thereon, it was the duty of the board of directors to call the election because of the presumption that prima facie, an identity of person is to be presumed from identity of name, and that by virtue of this presumption petitioners established a prima facie showing that the persons signing the petition were not only registered, qualified electors, but also represented a majority of the property owners residing in the district.

Without discussing the effect of the claimed presumption in the instant proceeding, it seems clear to us that the court's conclusion that the petition was otherwise deficient is suffi-

cient to sustain the judgment. A substantial compliance with the statute is essential. Where a statement required to be set forth is totally omitted or affirmatively misrepresented, it cannot be said that there is a compliance with the statute.

The judgment of what is a substantial compliance with the statute is to be exercised in the first instance by the trial court. If the case is one where a requirement of the statute has not been entirely disregarded, its determination of the question of substantial compliance ought to be controlling in the absence of an abuse of discretion. (*Beck* v. *Ransome-Crummey Co.*, 42 Cal.App. 674 [184 P. 431].) We see no abuse of that discretion in the instant proceeding.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.